**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

In Re:                                                      Case No. 8:25-BK-04857-CPM

RONALD H. CARPENTER, JR.,                                   Chapter 11

              Debtor.

_____/

**SECURED CREDITOR'S OBJECTION**
**TO CONFIRMATION OF CHAPTER 11 PLAN**
**(RE: 1501 Doyle Carlton Drive, Apartment 408, Tampa, Florida 33602)**

COMES NOW, U.S. Bank Trust National Association, not in its individual capacity but solely as Trustee of Third Mortgage ("Creditor"), by and through undersigned counsel, hereby files its *Objection to Confirmation of Chapter 11 Plan of Reorganization* (Docket No. 128), and in support states as follows:

**I.      STATEMENT OF FACTS:**

**A.      LOAN HISTORY:**

1.      On November 15, 2024, Ronald H. Carpenter Jr, Debtor, executed a Home Equity Line of Credit Agreement (the "Note") secured by a Mortgage (the "Mortgage") granting a security interest in the property located at 1501 Doyle Carlton Drive, Apartment 408, Tampa, Florida 33602 (the "Property"). The Mortgage reflects that it was duly recorded. (*See* Claim No. 19-1).

**B.      BANKRUPTCY CASE:**

2.      On July 16, 2025, Debtor filed a voluntary petition for relief pursuant to Chapter 11 of the United States Bankruptcy Code in the Middle District of Florida and was assigned case number 8:25-bk-04857-CPM.  Debtor listed the Property as the principal residence on the Bankruptcy Petition. (See Docket No. 1).

3.    On September 24, 2025, Creditor filed its Proof of Claim listing a secured claim of $213,305.82, including pre-petition arrears of $4,383.23. (See Claim No. 19-1).

4.    On November 13, 2025, Debtor filed his Chapter 11 Plan (Dkt No. 128). Debtor listed the Claim in Class 2 as impaired. Pursuant to the Plan, Debtor proposed to pay the Creditor's Claim as follows:

> Class 2: Secured Claim of U.S. Bank (Homestead). This Class consists of the Allowed Secured Claim of U.S. Bank, secured by a first mortgage Lien on the Debtor's Homestead. After the Effective Date, the Debtor will pay the required monthly mortgage payments to U.S. Bank as such payments become due under the terms of the existing promissory note and mortgage. The existing promissory note and mortgage and any and all documents, filings, or instruments evidencing, arising out of, or relating to the claim and indebtedness owed by the Debtor to U.S. Bank on account of its Allowed Class 2 Claim shall remain in full force and effect, except to the limited extent they are specifically and expressly modified in this Plan. Any arrearage will be cured by the Debtor paying an additional amount equal to one-half (1/2) of the monthly payment at the time the Debtor makes the regular monthly mortgage payment. U.S Bank shall defer collection of any attorney's fees and costs incurred by U.S. Bank with respect to the obligation secured by the Debtor's Homestead until the time that the Unsecured Creditor Distribution is distributed to the Holders of Allowed Class 6 Claims, at which time any claim for attorney's fees and costs shall be paid. U.S. Bank shall retain its Lien on the Homestead on account of its first mortgage. Class 2 is Impaired, and the Holder of any Allowed Class 2 Claim is entitled to vote to accept or reject the Plan.

## II.    ARGUMENT:

### A.    THE PLAN VIOLATES §§1123 and 1124

#### 1.    The Bankruptcy Code Prohibits the Debtor from Modifying Creditor's Claim Secured by the Principal Residence.

5.    11 U.S.C. §1123(b)(5) prohibits the Debtor from modifying claims secured solely by the Debtor's principal residence without consent. 11 U.S.C. §1123(b)(5).

6.    Generally, a claim is impaired unless it "leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest…." or "…notwithstanding any contractual provision or applicable law that entitles a creditor to demand or receive accelerated payments of such claim or interest after the default…(A) cures any such default that

occurred *before or after* commencement of the case, (B) reinstates the maturity of such claim or interest as existed before such default, (C) compensates the creditor for any damages incurred as a result of any reasonable reliance on such contractual provisions or applicable law; (D) compensates the creditor for any non-monetary default, other than failure to operate a nonresidential real property lease; and (E) *does not otherwise alter the legal, equitable or contractual rights to which such claim or interest entitles the creditor*. *See* 11 U.S.C. §1124(a), (b) (emphasis added).  Indeed, generally, <u>any alteration</u> of rights constitutes impairment, even if the value of the rights is enhanced.  *See In re Wabash Valley Power Ass'n, Inc.*, 72 F.3d 1305 (7th Cir. 1995).

7.      Here, Debtor occupies the Property as the principal residence.  (*See* Dkt. No. 1).  Accordingly, Debtor is prohibited from modifying Creditor's Claim without consent.  Debtor listed the Claim in Class 2 as impaired.  Pursuant to the Plan, after the effective date, Debtor will pay the ongoing monthly mortgage payments as they come due.  Debtor will cure any arrears by paying an additional amount equal to one-half of the monthly payment at the same time Debtor makes the ongoing monthly mortgage payment.

8.      Debtor's Plan requires Creditor to defer collection of attorney's fees and costs secured by Debtor's principal residence, incurred by Creditor until after the Class 6 Unsecured Creditors receive their distribution.  Debtor's Plan proposes to pay five annual installments, starting within three months of the effective date and ending after four additional annual installments.

9.      Creditor has not consented to an extended cure term beyond the Effective Date of the Plan, or to defer incurred attorney's fees and costs secured by Debtor's primary residence until after the unsecured creditors receive their distribution.

10.      For these reasons, Debtor's Plan violates 11 U.S.C. §1123(b)(5) and must be denied.

2.      **Creditor's Claim is Impaired Unless the Contractual Arrears are Cured, or the Claim is Paid in Full, by the Effective Date of the Plan.**

11.      Chapter 11 of the Bankruptcy Code provides that a plan of reorganization must, among other things, "provide adequate means for the plan's implementation," including the "curing or waiving of any default." 11 U.S.C. § 1123(a)(5)(G). If a debtor is seeking to "cure" a default under 11 U.S.C. § 1124, then the debtor must generally cure said default by the effective date of the Plan or within a reasonable time and in accordance with the contractual documents, which would include interest on said arrears in accordance with the Note.  *See* 11 U.S.C. §1123(d); *In re Tri-Growth Centre City, Ltd*., 136 B.R. 848, 852 (Bankr. S.D. Cal. 1992); *In re Lennington*, 288 B.R. 802, 804-06 (Bankr. C.D. Ill. 2003).

12.      As discussed above, "In general, a class of claims is impaired under section 1124 if the plan alters the legal, equitable or contractual rights to which the holders of such claims are otherwise entitled, unless the only alteration is the reinstatement of the original maturity and curing defaults with respect to an accelerated debt." 7 *Collier on Bankruptcy* ¶ 1124.02 (Richard Levin & Henry J. Sommer eds., 16th ed.).  For example, changing the contractual interest rate,[1] making deferred payments on terms different from the original contract,[2] or stretching payment beyond the maturity of its original contract,[3] all constitute impairment of the claim. *See In re S-Tek 1 LLC, 2021 WL 5858906, at *3 (Bankr. D.N.M. Dec. 9, 2021)*. A claim can also be impaired by changing noneconomic contract terms. *Id.*

13.      Thus, to be unimpaired by a plan, the debtor's plan must either "leave[ ] unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or

---

[1] *In re Valencia Flour Mill, Ltd.*, 348 B.R. 573, 577 (Bankr. D.N.M. 2006) (creditor whose claim under debtor's proposed plan would be paid at an interest rate other than the contract rate was impaired).

[2] *In re G.L. Bryan Invs., Inc.*, 340 B.R. 386, 390 (Bankr. D. Colo. 2006) (citing *In re Grandfather Mountain Ltd.*, 207 B.R. 475, 485 (Bankr. M.D.N.C. 1996)).

[3] 7 *Collier on Bankruptcy* ¶ 1124.03 (Richard Levin & Henry J. Sommer eds., 16th ed.) ("[A] delay in payment of a claim beyond its contractual maturity date results in impairment.") (citing *G.L. Bryan*, 340 B.R. at 391).

interest," § 1124(1), or satisfy a set of criteria to cure any default, reinstate the claim's maturity date, compensate the creditor for any damages, and not otherwise "alter the legal equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest." § 1124(2); *see also* 7 *Collier on Bankruptcy* ¶ 1124.01 (Richard Levin & Henry J. Sommer eds., 16th ed.) ("Under section 1124(2), in general, the plan can leave a class of claims or interests unimpaired by curing defaults, reinstating the maturity of the claims or interests, compensating the holders for any damages, and not otherwise impairing the rights of the holders.").

14.     The burden is on the individual Chapter 11 debtor, as plan proponent, to demonstrate that a proposed plan leaves a creditor's rights unaltered. 11 U.S.C. § 1124; *see also In re Reuter*, 427 B.R. 727, 773 (Bankr. W.D. Mo. 2010).

15.     Bankruptcy courts that have addressed cure amounts under 11 U.S.C. § 1124(2)(A) appear to be virtually uniform in their opinion that the cure "must occur, in full, prior to or on the effective date of the plan in order to restore of the parties to their pre-default state. The effect of § 1124(2) is to treat the claim as if default had not occurred, but this can only be accomplished if 'cure' occurs in full and immediately." *In re Schatz*, 426 B.R. 24, 27 (Bankr.D.N.H.2009). *See also Tri–Growth Centre City, Ltd.*, 136 B.R. 848, 852 (Bankr.S.D.Cal.1992); *In re Jones*, 32 B.R. 951 (Bankr.D.Utah 1983*); In re Cottonwood Corners Phase V, LLC*, 2012 WL 566426, at *13 (Bankr. D.N.M. 2012); *In re Jacobs*, 2024 WL 1154093, at *11 (D.N.M. Mar. 18, 2024) (holding cure of arrears beyond plan term constituted impairment under §1124 and therefore violated §1123(b)(5)).

16.     Section 1123(d) provides that, if a plan proposes to cure a default, "the amount necessary to cure the default shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law." 11 U.S.C. § 1123(d).  The meaning of this provision is plain, and most courts have applied § 1123(d) as written, looking to the underlying loan agreement and state law to determine

whether a debtor must pay interest at the default rate to cure and reinstate its agreement under a chapter 11 plan. *See*, e.g., *New Invs.*, 840 F.3d at 1140-42; *In re Sagamore Partners, Ltd.*, 620 F. App'x 864 (11th Cir. 2015); *Depietto*, 2021 WL 3287416 at *6-7; *Moshe*, 567 B.R. at 444-46; *Moody*, 426 B.R. at 674.

17.     To cure and reinstate its loan under a plan of reorganization, the Debtor must pay default interest and fees to the extent required by its loan agreement and state law. *In re Golden Seahorse LLC*, 652 B.R. 593, 616 (Bankr. S.D.N.Y. 2023). (emphasis added).

18.     As discussed above, it is undisputed Debtor occupies the Property as the principal residence. Accordingly, the contractual arrears, including fees and costs, must be cured upon the Effective Date of the Plan.  As of December 16, 2025, the contractual arrears owed on the loan total $14,961.78.

19.     Based on the foregoing, confirmation of Debtor's Plan must be denied.

## B.     THE PLAN LACKS FEASIBILITY

20.     Pursuant to 11 U.S.C. §1129(a)(11), the Court is required to find that "confirmation is not likely to be followed by the liquidation or the need for further financial reorganization of the debtor...." The widely accepted application of this section is stated within the Second Circuit decision of *Chase Manhattan Mortgage and Realty Trust v. Bergman (In re Bergman),* 585 F.2d, 1171, 1179 (2nd Cir. 1978), wherein the Court stated:

> Under the test of feasibility, the court "used the probability of actual performance of the provisions of the plan.  Sincerity, honesty, and willingness are not sufficient to make a plan feasible, and neither are visionary promises.  The test is whether the things which are to be done after confirmation can be done as a practical matter under the facts."

*Chase Manhattan Mortgage and Realty Trust v. Bergman (In re Bergman),* 585 F.2d, 1171, 1179 (2nd Cir. 1978).  "The bankruptcy court has an obligation to scrutinize the plan carefully to determine whether it offers a reasonable prospect of success and is workable." *In re Pizza of Hawaii, Inc.*, 761 F.2d 1374,

1382 (9th Cir. 1985).  To establish feasibility, the plan proponent must demonstrate concrete evidence of a sufficient cash flow to fund and maintain both its operations and obligations under the Plan.  *S &P, Inc. v. Pfeifer*, 189 B.R. 173, 183 (N.D. 1995) (quoting *In re SM 104 Ltd.*, 160 B.R. 202, 234 (Bankr. S.D. Fla. 1993)).

21.      Title 11 U.S.C. §1123(a) states that a Plan shall provide adequate means for its implementation. The absence of an adequate means of implementation demonstrates a lack of good faith under Section 1129(a)(3), thereby precluding confirmation of a Chapter 11 Plan.  *In re Walker*, 165 B.R. 994, 1003 (Bankr. E.D. Va. 1994).  Debtor must have more than visionary promises and willingness, Debtor must demonstrate concrete evidence of a sufficient cash flow to fund and maintain both his operations and obligations under a proposed Chapter 11 Plan.  *See S&P, Inc. v. Pfeifer*, 189 B.R. 173, 183 (N.D. Ind. 1995) (quoting *In re SM 104 Ltd.*, 160 B.R. 202, 234 (S.D. Fla.1993)).

22.      Here, feasibility of Debtor's Plan is contingent upon Debtor's wife's effort to pay monthly household expenses so Debtor has enough income to make the plan payments.  Debtor has very little disposable income after making the monthly plan payments, and Debtor's budget does not include payment of property taxes or property insurance on his primary residence, or payments toward the annual $20,000.00 to unsecured creditors.  The monthly mortgage payment of $1,575.11 only includes principal and interest.  Debtor is responsible for paying property taxes and property insurance directly, but does not include payment of either in his budget.

23.      Additionally, Debtor's proposed first post-confirmation plan payment leaves Debtor with ($2,073.11), even with his wife paying all household expenses.

24.      Confirmation must be denied as Debtor has failed to present evidence to support his ability to maintain the obligations under the Plan.

WHEREFORE, Creditor respectfully requests the entry of an order which denies confirmation of Debtor's Chapter 11 Plan.

Dated: December 18, 2025                              ALDRIDGE PITE, LLP


/s/ _ *Tricia A. Morra* ____
Tricia A. Morra (FLBN 0095989)
Aldridge Pite, LLP
101 East Park Blvd, Suite 600
Plano TX 75074
tmorra@aldridgepite.com
Telephone: (404) 994-7290
Attorney for Secured Creditor

Mailing Address
3333 Camino del Rio South
Suite 225
San Diego, CA 92108

## CERTIFICATE OF SERVICE

I hereby certify that I caused a copy of the foregoing OBJECTION TO CONFIRMATION OF

CHAPTER 11 PLAN to be served on December 18, 2025.  Service was accomplished by the method and

to the following as indicated:

BY ELECTRONIC NOTICE OR FIRST CLASS MAIL

Ronald H. Carpenter, Jr.
1501 Doyle Carlton Drive, #408
Tampa, FL 33602

Kathleen DiSanto
Bush Ross, P.A.
Post Office Box 3913
Tampa, FL 33601-3913
kdisanto@bushross.com

Nicole Peair
Timberlake Annex
501 E Polk Street, Suite 1200
Tampa, FL 33602
Nicole.W.Peair@USdoj.gov

U.S. Trustee
Timberlake Annex, Suite 1200
501 E Polk Street
Tampa, FL 33602

Townsend J Belt
Strategist Law, PLLC
1309 E 8th Ave
Tampa, FL 33605

John M. Brennan
Gray Robinson
301 E. Pine Street
Suite 1400
Orlando, FL 32802-3068

Ronald B Cohn
Burr & Forman LLP
201 North Franklin Street
Suite 3200
Tampa, FL 33602

Brian T FitzGerald
Hillsborough County Attorney
Senior Assistant County Attorney
PO Box 1110
Tampa, FL 33601-1110

Alberto F Gomez, Jr.
Johnson Pope Bokor Ruppel & Burns, LLP
400 North Ashley Drive
Suite 3100
Tampa, FL 33602

Erik Johanson
Erik Johanson PLLC
3414 W Bay to Bay Blvd
Ste 300
Tampa, FL 33629

Stephanie C Lieb
Trenam Law
101 East Kennedy Boulevard, Suite 2700
Tampa, FL 33602

Eric Shaun Matthew
Atlas Solomon, PLLC
819 SW Federal Hwy
Ste 301
Stuart, FL 34994

Dana Lee Robbins-Boehner
Burr & Forman, LLP
201 North Franklin Street, Suite 3200
Tampa, FL 33602

Andrew J Wit
Jennis Morse
606 East Madison Street
Tampa, FL 33602

I declare under penalty of perjury that the foregoing is true and correct.

Dated: December 18, 2025                    /s/__*Tricia A. Morra*____
                                             Tricia A. Morra